UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-CR-182 (JNE/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                           )<br>         Plaintiff,        )<br>                           )<br>      v.        )<br>                           )<br>JOHN LEE JONES,        )<br>                           )<br>       Defendant.        )<br>                           ) | **OMNIBUS RESPONSE TO DEFENDANT'S PRE-TRIAL MOTIONS** |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Samantha H. Bates, Assistant United States Attorney, respectfully submits the following consolidated response to Defendant's pretrial motions. (Dkts. 21-24).

## I.    Background

On June 28, 2022, deputies from the Hennepin County Sheriff's Office Violent Offender Task Force ("VOTF") were working a summer joint enforcement operation in Minneapolis. At approximately 11am, while driving down Lyndale Avenue North at Lowry Avenue, deputies observed a silver BMW with dark tinted windows.[1] Deputies initiated a traffic stop. Law enforcement immediately observed the driver, later identified as DB, move his body around

---

[1] In Minnesota, a passenger vehicle's windows must allow more than 50% of light in—a window with a tint reading below 50% is in violation. *See* Minn. Stat. § 169.71 subd. 4.

and up as if he was trying to conceal something.  The backseat passenger, later identified as Defendant John Lee Jones, was observed leaning from the back to front seat multiple times.  The deputies stopped their approach, drew firearms, and yelled for occupants to turn off the vehicle, roll down the windows and keep their hands up.  Ignoring commands, DB exited the front seat with his hands visible stating that he "had to get out of the car right away."

As DB left the vehicle, deputies observed the defendant continue to rapidly move around inside the car.  The front seat passenger, later identified as BL, attempted to exit the vehicle but was directed to stay seated.  Simultaneously, the defendant jumped from the backset to the driver's seat and attempted to exit the vehicle.  Deputies held the defendant until further back-up could arrive—it was a chaotic scene.  The defendant was belligerent and resisted entering the squad vehicle.  At one point he screamed at law enforcement that everything in the car was his.

After the three occupants were removed from the vehicle, law enforcement approached the vehicle, opened the door, and observed a firearm in plain view on the backseat.  A second firearm was located under a black hat next to the first firearm.  A small bag of suspected cocaine, and multiple bags of fentanyl pills were recovered from a mini backpack next to the firearms.  Another bag of fentanyl pills was located on the backseat floorboard.  Later, 16 fentanyl pills were recovered from where the defendant was sitting in the squad car.

2

In a post-Miranda statement, the defendant stated that both firearms and the drugs were his and he obtained items from a "lick" he did a few days prior. The defendant is charged with one count of possession with the intent to deliver fentanyl in violation of 21 U.S.C. § 841(b)(1)(B) and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2).

## II.    Non-Dispositive Motions

### 1.  Defendant's Motion to Retain Rough Notes (Dkt. 21)

Defendant requests an Order requiring law enforcement to preserve rough notes taken as part of the investigation.  (Dkt. 21).  It is well established in the Eighth Circuit that the United States is not required by law to preserve rough notes taken by agents during an investigation.  *See United States v. Grunewald*, 987 F.2d 531, 535 (8th Cir. 1993).  In this District, the government does not normally object to pretrial motions which seek the agents to retain their rough notes.  Accordingly, the government does not object to this motion to the extent that any such rough notes still exist.

However, the government opposes any request for the disclosure of those rough notes to the defendant.  Rough notes are not considered statements within the meaning of the Jencks Act, 18 U.S.C. § 3500.  *United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence witness signed, adopted or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990)

3

(defendant not entitled to discover government agents' general notes from witness interviews).  Nor are agent rough notes generally discoverable as a "statement" of the agent." *See United States v. Simtab*, 901 F.2d 799, 808-09 (9th Cir. 1990) (defendant not entitled to discover testifying agents' destroyed rough notes of investigations because Jencks Act material when merely represented pieces of information put in writing to refresh memory); *United States v. Williams*, 875 F.2d 846, 853 (11th Cir. 1989) (defendant not entitled to discover agents' personal notes, contact sheets, witness lists, summaries of non-testifying witnesses' statements when bulk of material not relevant to subject matter of agents' testimony).

## 2. **Defendant's Motion for Disclosure of 404(b) Evidence (Dkt. No. 22)**

Defendant requests that the government disclose evidence covered by Rule 404(b) of the Federal Rules of Evidence.  (Dkt. 22).  The government agrees to notify the defense of any Rule 404(b) evidence it intends to offer at trial by no later than two weeks before trial, or upon learning of the existence of the evidence, whichever occurs later in time.

The government notes that Rule 404(b) does not encompass any acts that are intrinsic to the charged offense.  *See* F.R.E. 404(b), advisory committee's notes, 1991 Amendments; *see also United States v. Adediran*, 26 F.3d 61 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do

4

not apply to "inextricably intertwined" evidence).  Consistent with Rule 404(b), the government does not intend to provide the defense with specific notice of its intent to use evidence of the defendant's intrinsic conduct at trial.

### III.   <u>Dispositive Motions</u>

**3.  Defendant's Motion to Suppress Statements.  (Dkt. No. 23)**

Defendant moves the Court for an Order suppressing all statements, admissions, and answers made to law enforcement prior to, at the time of, or subsequent to his arrest.  (Dkt. 23). Defendant generally cites violations of the Fourth, Fifth, and Sixth Amendment.  (*Id.*)  In the government's view, the defendant made three types of statements:

(1) *Spontaneous utterances*: After being removed from the BMW, the defendant was handcuffed for officer safety.  He became very unruly and a struggle ensued as officers attempted to place him in the squad car.  Completely unprompted, he proceeded to scream, "Fuck y'all that's my shit, bitch.  I don't give a fuck all of that is mine bitch," while sitting in the back of the squad car.  (*See* Govt. Ex. 1, Body Worn Camera Video at 11:21:25).

(2) *Statements during transport*: Following the traffic stop, Sgt. Peterson and his partner, Deputy Wong, entered the squad and drove the defendant and DB to jail.  During the drive, the defendant made

several statements to law enforcement—some unprompted and some in response to questions by the officer.

(3) *Mirandized statement*: After arriving at the Hennepin County Jail, Sgt. Peterson advised the defendant of his Miranda rights. The defendant spoke with Sergeant Nicholas Peterson and consented to providing a DNA buccal swab. (*See* Govt. Ex. 2, Audio Statement).

The government will show, through body worn camera video evidence, that the spontaneous statements the defendant made while in the back of the squad car are admissible (assuming the Court determines that officers had the right to conduct the stop in the first place), as well as the defendant's post Miranda statement at the jail. At the hearing, the government intends to elicit testimony from Sgt. Peterson as to the circumstances surrounding the defendant's statements.

The government does not intend to offer, in its case in chief, the defendant's answers that were responsive to any interrogation during his transport to the jail. Therefore, the defendant's motion should be denied as moot to the extent it pertains to the responsive statements he made during transport.

### 4. Motions to Suppress Evidence Obtained as a Result of an Automobile Stop.  (Dkt. No. 24)

Defendant contends that the automobile stop was conducted without reasonable suspicion of a traffic or criminal offense occurring, challenges the warrantless search of the vehicle, and asserts that the seizure of the car and its occupants was not based on probable cause.  (Dkt. 24).

As a passenger in the BMW, the defendant has standing to contest the stop of the BMW but has not pointed to *any* evidence that he had a proprietary or possessory interest in the BMW.  As such, the defendant has failed to demonstrate any expectation of privacy in the vehicle and lacks standing to challenge the search of the BMW. "An individual asserting Fourth Amendment rights 'must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.'" *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)); *see also United States v. Ruiz–Zarate*, 678 F.3d 683, 689 (8th Cir. 2012) ("[T] to challenge a search or seizure under the Fourth Amendment, the defendant must show that (1) he has a reasonable expectation of privacy in the areas searched or the items seized, and (2) society is prepared to accept the expectation of privacy as objectively reasonable."). "The defendant moving to suppress bears the burden of proving he had a

legitimate expectation of privacy that was violated by the challenged search." *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).

In determining whether a defendant has standing to challenge a search, courts will look at factors such as "ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). Simply being a passenger in a vehicle driven by someone else does not confer standing to challenge a search of that vehicle. *See Rakas v. Illinois*, 439 U.S. 128, 138–44 (1978); *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015) ("Generally, a mere passenger does not have standing to challenge a vehicle search where he has neither a property nor possessory interest in the automobile."). Defendant is unable to meet his threshold burden, and his motion as to the search should be denied for that reason alone.

Notwithstanding that issue, the government intends on calling Sgt. Peterson to establish the constitutionality of the stop of the BMW. The government expects to demonstrate at the hearing that the stop of the BMW occurred after law enforcement observed the highly tinted windows on the vehicle—a traffic offense in the State of Minnesota—and initiated a valid

traffic stop.  In fact, when law enforcement measured the BMW windows the tint level was 4%—anything below 50% is a violation of Minnesota traffic law. The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).  "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  *Id.* at 813.  "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant."  *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011) (quotation omitted).  "Similarly, it is irrelevant that the officer would have ignored the violation but for his ulterior motive." *Id.*

The government requests that the issue of the defendant's standing to challenge the search of the BMW be resolved before any law enforcement testimony regarding the search is presented at the hearing and asks that Counsel for the defendant only be permitted to question such witness if the Court concludes the defendant has standing.  If necessary, Sgt. Peterson will be available to testify regarding the search of the BMW.

Law enforcement was justified in searching the BMW for multiple reasons. The "automobile exception" to the warrant requirement "permits the warrantless search of a vehicle if the police had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search

began." *United States v. Vore,* 743 F.3d 1175, 1179 (8th Cir. 2014). Here, the behavior of the vehicle's occupants led law enforcement to reasonably conclude that illegal items were being concealed in the BMW. None of the passengers complied with law enforcement orders to stay in the vehicle and keep still. The deputies immediately observed occupants of the BMW moving around the car in a manner indicative of hiding firearms and other illegal contraband.

Further, the search was lawful pursuant to the protective sweep exception to the search warrant requirement. It is well established that a law enforcement officer may conduct a protective search for weapons if he or she has merely a reasonable suspicion that a suspect is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). The rule allowing officers to conduct so-called "Terry" searches for the purpose of ensuring their own safety applies to vehicle searches conducted after the suspect is removed from the vehicle. *Michigan v. Long,* 463 U.S. 1032, 1049 (1983). See also *United States v. Goodwin-Bey*, 584 F.3d 1117, 1119 (8th Cir. 2009) (citing *Long*) (reasonable suspicion of dangerousness exception articulated in *Terry v. Ohio* applies to searches of vehicles). Indeed, "[a]t any investigative stop ... officers may take steps reasonably necessary to protect their personal safety." *United States v. Rowland*, 341 F.3d 774, 783 (8th Cir. 2003) (citations omitted). Here, the occupants of the vehicle were clearly concealing items as deputies initiated the stop, the scene was chaotic, and the defendant was combative. Deputies

needed to ensure that weapons were not accessible in the BMW as they worked to contain the scene.

The search of the vehicle was therefore lawful, and the motion to suppress should be denied.  The government reserves the right to offer additional legal arguments and justifications in support of the challenged events in post-hearing briefing.

Dated: September 28, 2022

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

s/Samantha H. Bates
BY:  SAMANTHA H. BATES
Assistant U.S. Attorney

11